# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| JOHNNY BELSOME, TIMOTHY ALLEN, JODY HINKLEY, DONALD MARCEL, KEITH HINKLEY, STARR ATCHISON, EDWARD THIEL, BRETT HUNTER, and TARA BELSOME, on behalf of themselves and all others similarly situated | * * * * * * * | |
| Plaintiffs, | * * | Civil action No. _____ |
| v. | * * | Judge: _____ |
| REX VENTURE GROUP, LLC d/b/a ZEEKREWARDS.COM, and PAUL R. BURKS, | * * * * | Magistrate:_____ |
| Defendants. | * | |

******************************************

## CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

### I.    Introduction

1.    This is a class action on behalf of all persons and entities who invested in a high yield investment program, a form of Ponzi scheme, between January 1, 1997 through the present (the "Class Period"), to recover damages caused by Defendants Rex Venture Group, LLC ("Rex Venture") d/b/a www.ZeekRewards.com ("ZeekRewards") and its principal, Paul Burks ("Burks")(collectively, the "Defendants") violations of federal securities laws, as well as the laws of the State of Louisiana, as alleged herein.

1

2. Defendants solicited Plaintiffs Johnny Belsome ("Belsome") and all those similarly situated (collectively, the "Plaintiffs") through the Internet and over interstate wires to participate in the ZeekRewards program, a self-described "affiliate advertizing division" for the companion website, [www.zeekler.com](www.zeekler.com) ("Zeekler"), through which Defendants operate penny auctions.

3. During the Class Period, the Defendants have raised more than $600 million from approximately 1 million investors worldwide, and approximately $38,450.00 from the proposed class representatives specifically named herein, by making unregistered offers and sales of securities through the ZeekRewards website in the form of Premium Subscriptions and VIP bids.

4. On August 17, 2012, Plaintiffs discovered that ZeekRewards was in fact a massive Ponzi and Pyramid scheme when the Securities and Exchange Commission ("SEC") filed suit in Rex Venture's home state of North Carolina. That same day, Judge Graham C. Mullen of the United States District Court for the Western District of North Carolina, Charlotte Division, entered an order appointing Kenneth D. Bell of McGuireWoods LLP as temporary receiver of ZeekRewards for the purposes of marshaling and preserving company assets.

5. Plaintiffs relied upon explicit representations made by Burks personally that their investments would return "up to 50%" of the company's daily net profits in the form of daily profit share awards. Hence, Defendants, in connection with the purchase or sale of securities, made materially false statements, with the explicit intention of defrauding Plaintiffs, which Plaintiffs relied upon to their great detriment.

## II. Jurisdiction and Venue

6. The claims asserted herein arise under Sections 10(b) and 20(a) of the Securities Exchange Act, 15 U.S.C. §§ 78j and 78t(a), and Rule 10b-5, 17 C.F.R. § 240.10b-5, promulgated thereunder by the SEC, as well as under the laws of the State of Louisiana. This Court has jurisdiction over this controversy pursuant to Section 27 of the Exchange Act, 15 U.S.C. § 78aa, and 28 U.S.C. § 1367.

7. Venue is proper in this judicial district pursuant to Section 27 of the Exchange Act, 15 U.S.C. § 78aa and 28 U.S.C. § 1391(b). Substantial acts in furtherance of the alleged fraud and/or its effects have occurred within this District; both Defendants Burks and Defendant Rex Venture d/b/a ZeekRewards offered and sold securities that are the subject of this action, to investors in this District.

8. In connection with the acts alleged in this Complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including, but not limited to the mails.

## III. Parties

9. Plaintiffs (hereinafter, the "Plaintiffs") are as follows:

(a) Plaintiff, Johnny Belsome is a natural person who is at present, a resident of Belle Chasse, Louisiana. Johnny Belsome lost his investment of $7,500.00;

(b) Plaintiff, Timothy Allen is a natural person who is at present, a resident Miramar Beach, Florida. Timothy Allen lost his investment of $5,000.00;

(c) Plaintiff, Jody Hinkley is a natural person who is, at present, a resident of Belle Chasse, Louisiana. Jody Hinkley lost his investment of $3,000.00;

(d) Plaintiff, Donald Marcel is a natural person who is, at present, a resident of Belle Chasse, Louisiana. Donald Marcel lost his investment of $10,000.00;

(e) Plaintiff, Keith Hinkley is a natural person who is, at present, a resident of Belle Chasse, Louisiana. Keith Hinkley lost his investment of $7,000.00;

(f) Plaintiff, Starr Atchison is a natural person who is, at present, a resident of Gretna, Louisiana. Starr Atchison lost her investment of $700.00;

(g) Plaintiff, Edward Thiel is a natural person who is, at present, a resident of Marrero, Louisiana. Edward Thiel lost his investment of $1,000.00;

(h) Plaintiff, Brett Hunter is a natural person who is, at present, a resident of Westwego, Louisiana. Brett Hunter lost his investment of $4,000.00; and

(i) Plaintiff, Tara Belsome is a natural person who is, at present, a resident of Belle Chasse, Louisiana. Tara Belsome lost her investment of $250.00.

10. Defendant Rex Venture Group, LLC (Rex Venture") is a Nevada limited liability company with its principal place of business in Lexington, North Carolina. Rex Venture wholly owned and operated ZeekRewards, an Internet website ([www.zeekrewards.com](www.zeekrewards.com)) until its assets were seized and frozen by the SEC on August 17, 2012.

11. Defendant Paul R. Burks, age 65, is a natural person, who is at present, a resident of Lexington, North Carolina. Burks is the sole owner of Rex Venture Group, LLC and exercised exclusive control over ZeekRewards, Zeekler, and other affiliated websites.

# IV. Class Action Allegations

12. Plaintiffs bring this action as a class action pursuant to Federal Rules of Civil Procedure 23(a) and (b)(3) on behalf of all persons and entities who invested in ZeekRewards from January 1, 1997, when Defendant Burks first formed Rex Venture's predecessor, through the present and who suffered damages as a result of the wrongdoing of the Defendants (the "Class"). Excluded from the Class are Defendants, officers and directors of Rex Ventures, members of their immediate families and their legal representatives, heirs, successors, or assigns, and any entity in which Defendants have or had a controlling interest.

13. The members of the Class are so numerous that joinder of all members is impracticable. While the exact number of Class members is unknown to Plaintiffs at this time, the SEC estimates the number to reach approximately 1 million worldwide.

14. Plaintiffs' claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of the federal and state laws described herein.

15. Plaintiffs will fairly and adequately protect the interests of the members of the Class. Plaintiffs have retained competent counsel, experienced in class actions, securities litigation, and litigation involving breaches of fiduciary duties.

16. Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

(a) whether the federal securities laws were violated by Defendants' act as alleged herein;

(b) whether Defendants' conduct alleged herein was in breach of fiduciary duties they owed to Plaintiffs and Class members, and therefore violated the laws of the State of Louisiana;

(c) whether Defendants' conduct alleged herein constitute Intentionally Fraudulent Conduct against Plaintiffs and Class members, and therefore violated the laws of the State of Louisiana; and

(d) the extent and measurement of the damages suffered by Plaintiffs and the Class.

17. A class action is superior to all other available methods for the fair and efficient adjudication of this controversy, since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

## V. Factual Allegations

18. Beginning in 1997, Burks commenced operations of Rex Ventures (and its corporate predecessor), which managed several online, multi-level marketing businesses.

19. In 2010, Burks created Zeekler.com, a penny auction website designed to sell a wide range of merchandise via auction with small bid increments, typically one cent. Upon information and belief, Zeekler.com was not very successful.

6

Case 3:12-cv-00800-GCM   Document 1   Filed 08/24/12   Page 6 of 15

20. In January 2011, Burks launched ZeekRewards, a self-described "private, invitation-only, affiliate advertising division" of Zeekler.com. The purported crux of ZeekRewards was a vehicle to sell bids to be used to purchase items on Zeekler.com. But ZeekRewards also encouraged its affiliates to give away free sample bids to be used in the penny auctions.

21. Through publicly available websites that Defendants own, operate, control, or sponsor, Defendants solicited Plaintiffs to become "affiliates" in ZeekRewards. Specifically, ZeekRewards offered Plaintiffs several ways to earn money, two of which involved the offer and sale of securities in the form of investment contracts: the "Retail Profit Pool" and the "Matrix."

22. Defendants attracted Plaintiffs with the promise of daily profit-share awards distributed through a Retail Profit Pool, which the SEC deigned a Ponzi scheme. According to Burks personally, as well as the ZeekRewards website, Plaintiffs expected to receive "up to 50% of the daily net profits."

23. Plaintiffs were required to meet certain qualifications to become "Qualified Affiliates." These qualifications included four criteria: (1) Plaintiffs enrolled in a monthly subscription plan requiring payments of $10, $50, or $99 per month (Plaintiff Belsome's subscription was $99/month); (2) Plaintiffs enrolled new penny auction customers personally, though the ZeekRewards co-op program, or through third-party businesses endorsed by ZeekRewards (Plaintiff Belsome enrolled over 150 customers); (3) Plaintiffs sold at retail or purchase and give away as samples a minimum of ten Zeekler.com bids, earning Profit Points (Plaintiff Belsome gave away at least 350 bids per day and at last count, Belsome had over 17,500 Profit Points); Plaintiffs placed at least one free ad daily

for Zeekler.com and submitted proof thereof to ZeekRewards (Plaintiff Belsome placed multiple ads per day and maintained at least five individual websites for the promotion of Zeekler.com).

24. Plaintiffs earned Profit Points by either (a) selling penny auction bid packages directly to retail customers ("Retail Bids"), or (b) purchasing bids and giving them away as samples to retail customers or to other personally-sponsored affiliates, thereby converting them into "VIP Bids." According to Plaintiff Belsome, affiliates rarely, if ever sold any Retail Bids directly to anyone, rather, the entire enterprise consisted largely of purchasing bids and converting them into "VIP Bids" in order to draw other investors into the program.

25. Plaintiffs were paid their share of net profits from the Retail Profit Pool in the form of daily "awards" or dividends on accumulated Profit Points, which functioned like shares of stock. Plaintiffs had the option of receiving such daily "award" as (a) a cash payment; (b) additional Profit Points; or (c) a combination of both. The "award" was typically stated to represent 1.5% of daily profit.

26. According to Plaintiff Belsome, affiliates rarely took cash payments and instead, as a general rule, chose to reinvest in additional Profit Points. On one occasion, just to test the veracity of the program, Belsome asked for and received a check in the amount of $30 as his "award." In fact, ZeekRewards strongly encouraged such reinvestment by suggesting affiliates convert at least 80% of their "award" into additional Profit Points.

27. In connection with the purchase and give away of VIP Bids, Plaintiffs also earned bonuses through the "Matrix," wherein those affiliates that enrolled in one of the afore-mentioned monthly subscription plan and recruited at least two other "Preferred

8

Customers" (investors who have also enrolled in a monthly subscription plan), would receive additional "awards."

28. Plaintiffs had no role in ZeekRewards's operations. Defendants alone created, updated and operated the websites, handled the payments, managed the bank accounts and payment service providers, managed Plaintiffs' accounts and customer accounts, managed affiliate and customer service, oversaw and disbursed all bids, operated the auctions, created all advertisements, sponsored recruiting videos and calls, and Burks unilaterally decided the daily payout percentages for the Retail Profit Pool, as well as Matrix bonuses.

29. Defendants represented to Plaintiffs that they would be paid "up to 50%" of the company's daily net profits share awards. Burks alone is solely responsible for determining the amount of "net profits" to share in the Retail Profit Pool. Burks formulated such determination so as to appear that the daily dividend averaged the stated 1.5% per day. This misrepresentation gave Plaintiffs the false impression that the business was profitable and led directly to their continued investment.

30. In fact, Defendants' operation was a Ponzi scheme, in which over 90% of all revenues were derived from new investor deposits rather than retail sales or otherwise. Without a constant influx of new investor deposits, the scheme would have collapsed on its own had the SEC not intervened on behalf of Plaintiffs.

31. As a direct result of both Defendants' fraudulent conduct, Plaintiffs, as well as all Class members, suffered a loss of their initial and subsequent investments, as well as their purportedly earned "awards." In particular, Plaintiffs relied on explicit statements from

Burks himself that their investments would and were in fact generating 1.5% daily profit on average. Burks' materially false and misleading statements therefore, induced Plaintiffs and Class members to invest in his fraudulent scheme, which in turn caused direct harm to Plaintiffs and Class members.

## VI. Claims for Relief

### Violation of Section 10(b) of the Exchange Act and
### Rule 10b-5 of the Securities and Exchange Commission

32. Plaintiffs reallege paragraphs 1 – 31 as though fully set forth herein.

33. During the Class Period, Defendants directly engaged in a deliberate scheme of unlawful conduct, pursuant to which they knowingly and recklessly engaged in acts, practices, and courses of business, which operated as a fraud and deceit on Plaintiffs and the other members of the Class. Burks personally made explicit deceptive and untrue statements of material fact and omitted to state material facts in order to make statements made, in light of the circumstances under which they were made, misleading to Plaintiffs and the other members of the Class. The purpose and effect of the statements, as well as the underlying scheme, was to induce Plaintiffs and the other members of the Class to invest in ZeekRewards.

34. In ignorance of the false and misleading statements described herein, and the deceptive and manipulative devices and contrivances employed by Defendants, Plaintiffs and the other members of the Class relied, to their detriment, on such false and misleading statements and omissions in investing in ZeekRewards. Plaintiffs and the other members

of the Class have suffered substantial damages as a result of the wrongs alleged herein in amount to be proved at trial.

35. By reason of the foregoing, Defendants directly violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder in that they (a) employed devices, schemes, and artifices to defraud; (b) made untrue statements of material facts or omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, misleading; or (c) engaged in acts, practices, and a course of business which operated as a fraud and deceit upon Plaintiffs and the other members of the Class in connection with their investment in ZeekRewards.com.

**Violation of Section 20(a) of the Exchange Act**

36. Plaintiffs reallege paragraphs 1 – 31 as though fully set forth herein.

37. Burks acted as the controlling person for ZeekRewards within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of his exclusive management and direction of the company's operations, sales, accounting, plans and implementation thereof, Burks had the power to influence and control and did directly influence and control the decision-making of ZeekRewards.com, including the content and dissemination of the various statements that Plaintiffs allege herein as false and misleading. Burks had the ability to prevent the issuance of the false and misleading statements, or cause the same to be corrected, because he was the maker of the false and misleading statements.

38. Burks had direct and supervisory involvement in the day-to-day operations of the fraudulent scheme, and therefore, is presumed to have had the power to control or

influence the particular false and misleading statements that he himself made, which statements gave rise to the securities violations alleged herein.

39. By virtue of his position as controlling person, Burks is liable under Section 20(a) of the Exchange Act. As a direct and proximate cause of Burks' wrongful conduct, Plaintiffs and the other members of the Class suffered damages in connection with their investment in ZeekRewards.com.

**Breach of Fiduciary Duty**

40. Plaintiffs reallege paragraphs 1 – 31 as though fully set forth herein.

41. During the Class Period, Defendants owed Plaintiffs and the Class the highest fiduciary duty of good faith, fair dealing, loyalty and care.

42. Breach of a fiduciary duty entitles one to the recovery of damages, measured by the loss sustained by the party owed the fiduciary duty and the profit of which he has been deprived; the focus of this measure of damages is on the profit "deprived" from the party owed the duty, not the breaching party's actual gain. *See Woodward v. Steed*, 30,611, p. 2 715 So.2d 629, 631 (La. App. 2 Cir. 6/24/98).

43. As a result of Burks' abdication of his duties to use due care in the management, advisement, and oversight of the assets of ZeekRewards, Burks violated and breached his fiduciary duties of care and loyalty owed to Plaintiffs and the Class. Burks acted with intentional disregard of his fiduciary obligations to Plaintiffs and the Class.

44. As a proximate result of Burks's bad faith breaches of his fiduciary duties, Plaintiffs and other Class members have sustained damages and have lost their respective investments in ZeekRewards, in an amount yet to be determined and to be proven at trial.

45. Defendants' acts were willful and wanton and Plaintiffs and other Class members are entitled to punitive damages as permitted by law.

### Intentional/Fraudulent Misrepresentation

46. Plaintiffs reallege paragraphs 1 – 31 as though fully set forth herein.

47. During the Class Period, Plaintiffs entrusted their capital to the Defendants in exchange for substantial management fees. Therefore, Defendants had a duty to use reasonable care when providing investment management services to Plaintiffs.

48. To succeed in a claim for intentional/fraudulent misrepresentations, there must be allegations of: "(1) a misrepresentation of material fact, (2) made with the intent to deceive, (3) causing justifiable reliance with resulting injury." *Goodman v. Dell Publishing Co.*, 1995 WL 428602 (E.D.La. 1995).

49. Defendants made numerous statements, including but not limited to Burks' claim that the Plaintiffs could expect an average daily profit of 1.5%, that they knew Plaintiffs would rely upon. Plaintiffs and the Class members did in fact rely on such false statements to their great detriment.

50. Plaintiffs would not have entrusted their capital to Defendants had Plaintiffs known that Defendants were not actually making a profit from its retail business, and instead were

13

Case 3:12-cv-00800-GCM   Document 1   Filed 08/24/12   Page 13 of 15

simply pretending to earn profits by paying out as "rewards," money received from new investors.

51. As a direct and proximate and foreseeable result of Defendants' Intentionally Fraudulent Conduct, Plaintiffs and the other Class members lost their capital and purportedly earned profit and thereby suffered damages in an amount to be proven at trial.

WHEREFORE, Plaintiffs respectfully request that the Court grant the following relief and judgment as follows:

1. A determination that this action be maintained as a class action, designating Plaintiffs as Lead Plaintiff, and certifying Plaintiffs as Class Representatives under Rule 23 of the Federal Rules of Civil Procedure and appointing Plaintiffs' counsel, Marc R. Michaud and Patrick Miller LLC, as Lead Counsel;

2. A declaration that Defendants' violated Section 10(b) of the Exchange Act and Rule 10b-5 of the Securities and Exchange Commission, Section 20(a) of the Exchange Act, and Louisiana State law;

3. An award of compensatory damages in favor of Plaintiffs and the Class members for Defendants' wrongful conduct, in an amount to be determined at trial;

4. An award of punitive damages in favor of Plaintiffs and the Class for Defendants' wrongful conduct, in an amount to be determined at trial to the extent permitted by law;

5. An award to Plaintiffs and the Class of prejudgment interest on all damages recovered, to the extent permitted by law;

6. An award to Plaintiffs and the Class of their reasonable costs and expenses incurred in this action, including attorneys' fees and expert fees; and

7. All other relief in favor of Plaintiffs and the Class that the Court may deem just and proper.

PLAINTIFFS DEMAND A TRIAL BY JURY.

DATED this 24th day of August, 2012.                PATRICK MILLER LLC

/s/ *Marc R. Michaud*
Marc R. Michaud, La. Bar No. 28962
400 Poydras Street, Ste. 1680
New Orleans, LA 70130
(504) 680-4318 (Telephone)
(504) 527-5456 (Facsimile)
mmichaud@patrickmillerlaw.com (Email)